THE INDEPENDENT ORDER OF
FORESTERS, Appellant,

v.

Hon. McKay CHAUVIN, Judge,
Jefferson Circuit Court,
Appellee.

and

Forest Richard Pope, Real
Party in Interest.

No. 2005–SC–000193–MR.

Supreme Court of Kentucky.

Oct. 20, 2005.

Joseph L. Hamilton, Marjorie Farris, Allison E. Jones, Stites & Harbison, Louisville, Counsel for Appellant.

McKay Chauvin, Judge, Louisville, pro se.

Kenneth H. Baker, Louisville, Counsel for Real Party In Interest.

Opinion of the Court by Justice ROACH.

In an original action in the Court of Appeals, Appellant, the Independent Order of Foresters ("Foresters"), sought a writ of prohibition against the circuit court on the grounds that Forest Richard Pope's claims were barred by *res judicata.* The Court of Appeals denied the petition, finding that Foresters had failed to carry its burden of proof. On appeal, Foresters repeats its claim that Pope's cause of action is barred by *res judicata.* Because Foresters has failed to show that its claim is such that the extraordinary remedy of writ is even available, we affirm the Court of Appeals.

## I. FACTUAL BACKGROUND

Foresters is a fraternal benefit society that sells life and health insurance to its members. In 1989, Forest Richard Pope purchased a universal life insurance policy from Foresters. The insurance policy included a child term rider that would pay

the policyholder $10,000 upon the death of the covered child. Pope's daughter was the covered child under his policy. She died in 2000 at the age of 26. Pope filed a claim under the child term rider later that year, and Foresters denied it as not being in effect at the time of the daughter's death.

In 2001, Forest Richard Pope sued Foresters in the Jefferson Circuit Court over the child term rider of his insurance policy. Specifically, Pope alleged that he had purchased the child term rider and paid its annual premiums with the understanding that it would be effective until he turned 65.[1] This belief was based on the fact that the annual billing statements Pope received from Foresters listed February 2, 2009 (when Pope will be 65) as the termination date of the child term rider.

Foresters, however, claimed that coverage under the child term rider terminated at the earlier of the policyholder turning 65 or the policyholder's child turning 25. Foresters's interpretation was based on the following language in the rider: "[A] child will cease to be an Insured Child on the earlier of the child's 25th birthday or the anniversary of the date of issue of the certificate nearest the member's 65th birthday." Foresters claims that coverage lapsed when Pope's daughter turned 25 on July 3, 1998. However, Foresters continued to bill Pope and he continued to pay for the child term rider after his daughter turned 25.

Pope discovered the difference between his interpretation and Foresters's only when Foresters refused to pay the claim he filed in 2000. Foresters also refused to repay the premiums that Pope had paid after his daughter turned 25. Based on these facts, Pope alleged in his complaint

that Foresters had engaged in the practice of charging premiums when it knew or should have known that no benefit would inure to policyholders because their insured children had reached the age of 25. His complaint specifically claimed breach of contract, rescission, unjust enrichment, and negligent misrepresentation. He also sought to have the case certified as a class action, claiming that thousands of other people were similarly situated.

The insurance policy on which Pope based his lawsuit had previously been the subject of a nationwide class action lawsuit. That suit, which focused on Foresters's sales practices, was settled, and the Federal District Court for the District of New Jersey entered a Final Order and Judgment. *See Roy v. Independent Order of Foresters*, No. 97–CV–6225 (JCL), Final Order and Judgment (D.N.J. Aug. 3, 1999) [hereinafter Final Order and Judgment].

Foresters moved the trial court to dismiss Pope's claim as barred by *res judicata* because issues related to the child term rider, as part of the insurance policy in *Roy*, had already been decided by the *Roy* settlement. Foresters cited specifically to language in the Final Order and Judgment that gives it preclusive, *res judicata* effect over future claims based on the conduct involved in the *Roy* lawsuit. The trial court denied Foresters's motion, refusing to give the *Roy* Final Judgment and Order *res judicata* effect on Pope's claims. Specifically, the trial court held that Pope's current claims were distinct from those covered by the Final Order and Judgment because the *Roy* litigation "involved a point-of-sale fraud," whereas Pope's claims were based on allegations of "fraud ... after the purchase of the policy."

---

1. The allegations are taken from Pope's Second Amended Complaint. Because the litigation leading to the filing of the Second Amended Complaint was lengthy and complex, we will discuss it only when necessary to understand the current issues.

Rather than proceeding with discovery regarding Pope's claims, Foresters initiated an original action in the Court of Appeals by filing a petition for a writ of prohibition against the trial court on the alternative grounds that the circuit court was proceeding without jurisdiction or that Foresters would suffer great injustice and irreparable injury. Both grounds were based on Foresters's assertion that Pope's underlying cause of action was barred by *res judicata.* The Court of Appeals denied the petition, noting simply the following:

> The argument that Foresters makes in this original action fails to satisfy this Court that the respondent trial court is proceeding without jurisdiction. Further, in order to show entitlement to a review of the merits of its alternate argument, Foresters was required to demonstrate the ... prerequisites of lack of an adequate remedy by appeal or otherwise and great injustice and irreparable injury. It is clear to the Court that Foresters did not carry that burden.

Foresters now appeals to this Court as a matter of right. *See* Ky. Const. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court."); CR 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals.").

## II. ANALYSIS

The writ of prohibition is such an "extraordinary remedy" that Kentucky courts "have always been cautious and conservative both in entertaining petitions for and in granting such relief." *Bender v. Eaton,* 343 S.W.2d 799, 800 (Ky.1961). We have divided writ cases into "two classes," which are distinguished by "whether the inferior court allegedly is (1) acting without jurisdiction (which includes 'beyond its jurisdiction'), or (2) acting erroneously within its

jurisdiction." We have also delineated a third "class" of writ cases (in essence, a subclass of the "acting erroneously" class): the so-called "certain special cases." *Id.* at 801. Foresters claims it is entitled to a writ of prohibition under all three of the writ categories we have identified. Because the requirements for a writ under each class are different, we discuss Foresters's claim under each separately.

### A. Acting Without Jurisdiction

We recently announced the following standard as to the granting of writs when the lower court is allegedly acting without jurisdiction: "A writ of prohibition *may* be granted upon a showing that ... the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court ...." *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky.2004). Foresters claims that the trial court is proceeding outside its jurisdiction because Pope's action is barred by *res judicata.* Foresters cites three cases—*Slone v. R & S Mining, Inc.,* 74 S.W.3d 259 (Ky.2002); *Potter v. Eli Lilly and Co.,* 926 S.W.2d 449 (Ky.1996); and *Stephens v. Goodenough,* 560 S.W.2d 556 (Ky.1977)—in support of its contention.

Foresters has mischaracterized these cases. In *Slone,* we held that a dismissed workers' compensation claim cannot be reopened based solely on "evidence of a change of medical condition." 74 S.W.3d at 262. While *Slone* was based in part on *res judicata,* it does not stand for the blanket proposition that *res judicata* removes jurisdiction over a later, *other* claim. Even assuming that *Slone* is applicable outside the limited context of the workers' compensation statutory scheme, it only prohibits the reopening of the specific denial of an award.

Foresters's citation to *Potter* and *Stephens* is even less compelling. While Foresters correctly notes that *Potter* involved the appeal of a writ issued because the Court of Appeals felt that the circuit court had "lost jurisdiction to reopen the judgment," 926 S.W.2d at 452, it fails to note that we *reversed* the Court of Appeals and dissolved the writ in that case. But even if the Court of Appeals had been correct, its writ was premised on the claim that the circuit court had lost jurisdiction because the judgment had become final, not because of the *res judicata* effect of the judgment. More importantly, *Potter* contains no discussion of *res judicata*. *Stephens* stands merely for the proposition that a ruling on a petition for a writ of prohibition can have *res judicata* effect on a subsequent petition, not that it strips the court of jurisdiction to consider the subsequent petition.

■ As we have repeatedly recognized, "the rule of res judicata is an affirmative defense . . . ." *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459 (Ky.1998); *see also* CR 8.03 ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . res judicata . . . and any other matter constituting an avoidance or affirmative defense."). And as an affirmative defense, *res judicata* can be waived. *See, e.g., Old Line Life Ins. Co. of America v. Garcia*, 418 F.3d 546, 550 (6th Cir.2005) ("As a general rule, failure to plead an affirmative defense results in a waiver of that defense."). This alone indicates that *res judicata* has no jurisdictional dimension.

■ As applied to petitions for writs, the Ohio Supreme Court has articulated the controlling principle succinctly: "[R]es judicata is an affirmative defense which does not divest the jurisdiction of the second tribunal to decide the validity of that defense." *Whitehall ex rel. Wolfe v. Ohio Civ. Rights Comm.*, 74 Ohio St.3d 120, 656 N.E.2d 684, 687 (1995); *see also* 63C Am. Jur.2d, *Prohibition* § 65 (1997) ("The fact that the defense of res judicata based on a decision in a former action is available in a second action involving the same issues does not deprive the court in which the second action is brought of jurisdiction to try the case again, so as to warrant the issuance of a writ of prohibition; the aggrieved party's remedy is to set up the res judicata plea as a defense in that suit and to appeal from an adverse decision."). As such, Foresters's claim that the *Roy* Final Judgment and Order has *res judicata* effect on Pope's current cause of action is insufficient to warrant the remedy of a writ of prohibition under the jurisdictional category.

### B. Acting Erroneously

■ We recently announced the following standard as to the granting of writs in cases where the trial court is alleged merely to be acting erroneously:

> A writ of prohibition *may* be granted upon a showing . . . that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004); *see also Bender*, 343 S.W.2d at 801 ("In the second class of cases relief ordinarily has not been granted unless the petitioner established, *as conditions precedent*, that he (a) had no adequate remedy by appeal or otherwise, *and* (b) would suffer great and irreparable injury (if error has been committed and relief denied." (first emphasis added))).

■ "No adequate remedy by appeal" means that any injury to Appellants "could

not thereafter be rectified in subsequent proceedings in the case." *Bender,* 343 S.W.2d at 802. Lack of an adequate remedy by appeal is an absolute prerequisite to the issuance of a writ under this second category. *Id.* at 801. ("Our cases involving controversies in this second class, where it is alleged the lower court is acting or proceeding erroneously within its jurisdiction, have consistently (*apparently without exception* ) required the petitioner to pass the first test; i.e., he must show he has no adequate remedy by appeal or otherwise." (emphasis added)).

■■■ Foresters asserts that it has no adequate remedy by appeal because "[a]ny right to appeal ... *after* full trial on the merits is necessarily an *inadequate* remedy." That Foresters faces the costs of litigation absent our ordering the Court of Appeals to grant the writ simply is not enough to show inadequate remedy by appeal: "The alleged irreparable injury is the expense to be incurred in defending in the circuit court. Petitioners are in no different position from any other defendant who is put to the expense of contesting a claim. We do not find the aspect of injustice here which is necessary for prohibition. *The remedy of appeal appears to us to be adequate.*" *Brown v. Knuckles,* 413 S.W.2d 899, 901 (Ky.1967) (citations omitted, emphasis added); *see also Fritsch v. Caudill,* 146 S.W.3d 926 (Ky.2004) (holding that the possibility of trying case in the wrong venue did not present inadequate remedy by appeal because "[i]f appellants are correct that the Floyd Circuit Court is an improper venue for appellee's civil action, in due course, the trial court or an appellate court will so recognize and relief in the nature of dismissal for improper venue will be granted"); *Garrard County Bd. of Educ. v. Jackson,* 12 S.W.3d 686, 689 (Ky.2000) (holding "the appellants have not demonstrated that an erroneous

class certification ... would prejudice them in a manner which the courts cannot address on appeal").

Foresters attempts to avoid the effect of these cases by arguing that because of the large cost involved in defending a nationwide class action a second time, its remedy by appeal in this case, as opposed to the other less complex litigation we have previously addressed, is inadequate. We have previously rejected just such an argument:

In effect, we are invited to apply a different standard to big cases than we would apply to more modest cases. *The unfairness and unworkability of such a practice is evident and needs no further comment.*

... Our case law is sufficient to permit relief in truly extraordinary situations. We are unwilling to undermine the authority of trial courts by opening the appellate door via extraordinary writs to every party claiming error during pretrial proceedings and trial.

*National Gypsum Co. v. Corns,* 736 S.W.2d 325, 327 (Ky.1987) (emphasis added); *see also Fayette County Farm Bureau Fed'n v. Martin,* 758 S.W.2d 713, 714 (Ky.App.1988) ("That a party will be exposed to the inconvenience and cost of litigation does not alone justify immediate review of an otherwise nonfinal order.").

■■■ In making this argument, Foresters fails to acknowledge one of the fundamental aspects of writs as remedies: they are truly extraordinary in nature and are reserved exclusively for those situations where litigants will be subjected to substantial injustice if they are required to proceed. This is why the bar is set so high—in the form of the "conditions precedent" for the mere *availability* of a writ as a possible remedy—for an appellate court even to reach the question of whether the lower court has committed error. Ultimately, however, we conclude that the

remedy of a writ of prohibition is not available to Foresters because its remedy by appeal is adequate.

■ Finally, we note that though our cases have attempted to treat the adequacy of the remedy by appeal and the existence of great and irreparable harm as separate issues, *see Bender*, 343 S.W.2d at 801 ("so far as possible tests (a) and (b) should be considered separately"), the focus of the latter on irreparability has led to some inevitable overlap in some of our cases. But on this issue, we have expressly held that being forced to bear the cost of defending a lawsuit simply does not rise to the level of great and irreparable injury:

> By this proceeding, petitioners are attempting a premature appeal and seeking a precipitate decision of this Court on an interlocutory order. It takes a minimum of imagination to envision the utter confusion and chaos in the trial of cases if this Court should entertain original proceedings in cases of this character. The basis urged for so doing is the financial distress of litigants. This is not an uncommon status, however unwanted it may be, and is not confined to litigants. Thus, *the delay incident to litigation and appeal by litigants who may be financially distressed cannot be considered as unjust, does not constitute irreparable injury, and is not a miscarriage of justice.*

*Ison v. Bradley*, 333 S.W.2d 784, 786 (Ky. 1960) (emphasis added); *see also Fritsch*, 146 S.W.3d at 930 ("As to great and irreparable injury, we see none. Inconvenience, expense, annoyance, and other undesirable aspects of litigation may be present, but great and irreparable injury is not."); *Schaetzley v. Wright*, 271 S.W.2d 885, 886–87 (Ky.1954) ("We are inclined to think that a misunderstanding of the law may have arisen as a result of the frequent reference, in opinions of this Court,

to 'great and irreparable injury' as being one of the prerequisites to the issuance of an order of prohibition. An impression has arisen that the mere loss of valuable rights or property through an error of the court constitutes great and irreparable injury entitling the loser automatically to relief from the error. However, a careful analysis of the cases dealing with the supervisory power of the Court of Appeals under Section 110 of the Kentucky Constitution will disclose that in addition to the element of great and irreparable injury there must be some aspect of *injustice*. There must be something in the nature of usurpation or abuse of power by the lower court, such as to demand that the Court of Appeals step in to maintain a proper control over the lower court. The object of the supervisory power of the Court of Appeals is to prevent miscarriage of justice." (citations omitted)). Thus, Foresters has also failed to show great and irreparable injury.

### C. Certain Special Cases

■ The usual requirement that a petitioner show great and irreparable injury, however, "is not an absolute prerequisite" to the issuance of a writ. *Bender*, 343 S.W.2d at 801. As noted above, we have carved out a limited exception to this requirement for "certain special cases." But the exception is very limited:

> [I]n certain special cases this Court will entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration.

*Bender*, 343 S.W.2d at 801. We have tended to apply this exception only in those

limited situations where the action for which the writ is sought would blatantly violate the law, for example, by breaching a tightly guarded privilege or by contradicting the clear requirements of a civil rule. *See Wal–Mart Stores, Inc. v. Dickinson,* 29 S.W.3d 796, 803 (Ky.2000) (noting that deposing an attorney or paralegal involved in the case would normally fall under the "certain special cases" exception because of the attorney-client privilege); *id.* at 801–02 (noting that a judge's failure to include findings of fact as required by CR 34.01 in a premises inspection order met the exception); *Bender,* 343 S.W.2d at 803 (holding that a judge's order for production of a doctor's report was a violation of the then recently enacted Civil Rules and thus fell under the exception).

Fortunately, we need not wade into the quagmire of determining whether Foresters's claim meets the unique requirements of the "certain special cases" ' exception. This is because the exception allows a petitioner to avoid only the requirement of great and irreparable injury, not the requirement of lack of an adequate remedy by appeal. *Bender,* 343 S.W.2d at 801. As discussed above, Foresters has an adequate remedy by appeal, thus it cannot claim the protection of the "certain special cases" exception.

### III. CONCLUSION

We need not reach the merits of Foresters's *res judicata* claim because it has failed even to establish that the remedy of a writ of prohibition is available, much less that the Court of Appeals abused its discretion in denying the petition. Therefore, we affirm the Court of Appeals.

All concur.